[Cite as *W. Res. Group v. Shingler*, 2025-Ohio-726.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WESTERN RESERVE GROUP, ET AL., | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiffs-Appellants | Hon. Robert G. Montgomery, J.<br>Hon. Kevin W. Popham, J. |
| -vs- | |
| NICHOLE L. SHINGLER, ET AL., | Case No. 2024CA00135 |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDINGS:      Appeal from the Stark County Court of Common Pleas, Case No. 2023 CV 00331

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 3, 2025

APPEARANCES:

For Plaintiffs-Appellants

CRAIG G. PELINI
GIANNA M. CALZOLA
Pelini Campbell & Ricard, LLC
8040 Cleveland Ave., N.W., Suite 400
North Canton, Ohio 44720

For Defendants-Appellees

MARKUS E. APELIS
JENNIFER L. GARDNER
Gallagher Sharp, LLP
1215 Superior Ave., 7th Floor
Cleveland Ohio 44114

For Defendant-Appellee - The Basement, LLC, D/B/A The Basement Sports Bar & Grill

DOUG HOLTHUS
CARA M. WRIGHT
65 East State Street, Suite 2550
Columbus, Ohio 43215

*Hoffman, P.J.*

{¶1}    Plaintiff-appellant Western Reserve Group (hereinafter "Western Reserve") appeals the summary judgment entered by the Stark County Common Pleas Court dismissing its complaint against Defendant-appellee The Basement, LLC, dba The Basement Sports Bar & Grill (hereinafter "The Basement"), alleging violation of Ohio's Dram Shop Act.

STATEMENT OF THE FACTS AND CASE

{¶2}    The Basement operates a bar and restaurant in North Canton, Ohio. Nichole Shingler (hereinafter "Shingler") was a regular patron of the bar, often stopping for a drink and dinner after work.  On September 28, 2021, Shingler went to The Basement around 7:30 p.m., after her shift working at a local department store.  She arrived alone, with plans to meet a man she was seeing socially.

{¶3}    Two bartenders were working during the time Shingler was in the bar, Brittany Prunty and Jaco Muiter. Upon arriving at the bar, Shingler ordered a small vodka drink.  Because the drink contained a lot of ice, she ordered another immediately after finishing the first.  Shingler was joined by her date, as well as two other women.  Shingler believed one of the women was named Danielle, and the second Shingler knew only as "Brie."

{¶4}    Shingler ordered two pickleback shots.  Prunty served one of the shots to Shingler, and the other to her date.  Shingler's bill reflected she ordered chicken tenders, but she claimed she actually ordered "basement chips" and cheese curds.  Muiter served Shingler a 22-ounce Long Island Iced Tea.

{¶5}    At some point after she began drinking the Long Island Iced Tea, Shingler went to the restroom.  When Shingler came out of the restroom, Prunty noticed Shingler's

hair was "misplaced," her makeup was smeared, and she was noticeably intoxicated. Muiter noted Shingler was stumbling and falling off her barstool. Muiter took Shingler's keys at this point, and gave the keys to Brie, who indicated she was Shingler's designated driver.

{¶6} In addition to the Long Island Iced Tea and the vodka drinks, a Malibu drink appeared on Shingler's bar tab. Neither bartender recalled serving her the Malibu, and they both cut off Shingler after she came out of the restroom. Shingler believed she bought the Malibu drink for Danielle. In addition, an acquaintance of Shingler who was in the bar saw Shingler's entire group drink a shot; however, it is unclear if this shot was the pickleback shot Prunty remembered serving Shingler and her date, or an additional shot. A man who lives in Shingler's apartment building told Shingler he bought her a shot of Crown, but was unsure if she consumed the shot.

{¶7} Shingler and her party stayed until The Basement closed. Shingler, Brie, and Shingler's date left together. Shortly after leaving the bar, Shingler drove her car into the side of Sylvester's North End Grille (hereinafter "Sylvester's"). Sylvester's sustained extensive damage as a result of the crash. Sylvester's was insured by Western Reserve at the time.

{¶8} Western Reserve filed a complaint on February 24, 2023, alleging negligence and seeking punitive damages against Shingler, dram shop liability against The Basement and John Does 1-5, subrogation against all defendants, and loss of business/business interruption against all defendants. The Basement moved for summary judgment on the dram shop claim. The trial court granted the motion for summary judgment, finding:

Plaintiffs have not provided the Court with any evidence that would establish that Prunty or Muiter served Defendant Shingler when she was "noticeably intoxicated" as required by R.C. 4399.18. The Court finds that the deposition testimony demonstrates that, upon seeing that Defendant Shingler was exhibiting signs of being "noticeably intoxicated" after returning from the restroom, she was not served any additional alcoholic beverages by either Prunty or Muiter. In fact, Muiter confiscated her car keys upon observing her behavior and gave the keys to her designated driver.

**{¶9}** Judgment entry, June 10, 2024.

**{¶10}** Western Reserve filed a motion to reconsider, citing the recent availability of evidence of Shingler's blood alcohol test results. The trial court overruled the motion to reconsider. Western Reserve dismissed its remaining claims without prejudice.

**{¶11}** It is from the June 10, 2024 judgment of the trial court Western Reserve prosecutes its appeal, assigning as error:

THE TRIAL COURT ERRED IN GRANTING THE BASEMENT'S MOTION FOR SUMMARY JUDGMENT.

**{¶12}** Western Reserve argues the trial court erred in granting The Basement's motion for summary judgment, as reasonable minds could conclude The Basement violated R.C.4399.18. We disagree.

{¶13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶14} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has

no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 1997-Ohio-259, *citing Dresher v. Burt*, 1996-Ohio-107.

{¶15} At the outset, we note Western Reserve argues in its brief medical records reveal Shingler's blood alcohol level after the crash was .291. However, this evidence was not before the trial court at the time it ruled on The Basement's motion for summary judgment. Rather, Western Reserve based its motion for reconsideration on Shingler's blood alcohol level. Western Reserve has not separately assigned error to the trial court's denial of its motion for reconsideration based on this new evidence as required by App. R. 16(A). Accordingly, pursuant to App. R. 12(A)(2), we disregard Western Reserve's argument regarding the motion to reconsider. Because evidence of Shingler's blood alcohol level was not before the trial court at the time it ruled on the motion for summary judgment, we do not consider this evidence as part of the record before this Court in consideration of the assignment of error.

{¶16} R.C. 4399.18 provides in pertinent part:

> A person has a cause of action against a permit holder or an employee of a permit holder for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only

when both of the following can be shown by a preponderance of the evidence:

(A) The permit holder or an employee of the permit holder knowingly sold an intoxicating beverage to at least one of the following:

(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;

(2) A person in violation of section 4301.69 of the Revised Code.

(B) The person's intoxication proximately caused the personal injury, death, or property damage.

**{¶17}** R.C. 4301.22(B) provides, "No permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person."

**{¶18}** In *Gressman v. McClain*, the Ohio Supreme Court held "to recover damages in a civil action based upon a violation of R.C. 4301.22(B), a plaintiff must prove that the permit holder or his employee knowingly sold an intoxicating beverage to a noticeably intoxicated person whose intoxication proximately caused the damages sought." 40 Ohio St.3d 359, syllabus (1988). In *Gressman*, the appellant argued a permit holder should be liable if he knew or should have known a patron was intoxicated when intoxicating beverages were sold to him. *Id.* at 362–363. The Ohio Supreme Court declined to "accept appellant's invitation to announce a different standard," and instead held "actual knowledge of intoxication is a necessary component in fashioning a justiciable claim for relief under R.C. 4301.22(B). Constructive knowledge will not suffice. It has been observed that to hold otherwise would subject vendors of intoxicating beverages to

ruinous liability every time they serve an alcoholic beverage." *Id.* at 363. The court also stated knowledge of a patron's intoxication "may be obtained from many sources and in many ways, and is furnished or obtained by a variety of facts and circumstances." *Id.* A person has knowledge of an existing condition "when his relation to it, his association with it, his control over it, or his direction of it are such as to give him actual personal information concerning it." *Id.*

{¶19}  In order to have a cause of action against The Basement, Western Reserve must show evidence from which a reasonable trier of fact could conclude The Basement knowingly sold or furnished an intoxicating beverage to Shingler when she was noticeably intoxicated

{¶20}  Western Reserve argues there are disputed facts as to whether The Basement sold or furnished alcohol to Shingler after Prunty and Muiter noticed Shingler was visibly intoxicated, which occurred when Prunty and Muiter observed Shingler's appearance and behavior after exiting the restroom.

{¶21}  Both Prunty and Muiter testified in their depositions Shingler was noticeably intoxicated when she left the restroom.  They noted she was stumbling, slurring her words, talking loudly, and her hair and makeup were displaced.  Prunty and Muiter both testified they did not serve Shingler after she came out of the restroom.  Muiter testified he took Shingler's car keys and gave them to Brie, who represented to him she was driving Shingler.

{¶22}  Western Reserve correctly notes there is some confusion in the record about the drinks which were served and/or consumed by Shingler, and the time in which they were consumed.  Shingler's bar tab was opened at 7:28 p.m. and closed at 2:35 a.m.

The items on the tab, in order from top to bottom, are "Malibu, Chicken Tenders, 2 Vodka Well, 22oz Long Island, 2 Jameson Pickleback." However, the tab does not reflect what time or in what order the items were served. Neither Prunty nor Muiter remembered serving Shingler the vodka drinks or the Malibu. Shingler testified in her deposition she consumed the vodka drinks immediately after arriving at the bar, and before she drank the Long Island. Shingler believed she purchased the Malibu for the woman named Danielle, because it was Danielle's birthday. A bar patron saw Shingler consume a shot sometime between the hours of 8:00 p.m. and 9:45 p.m., but it is not clear if this shot was sold and served to Shingler by the staff of The Basement or provided to her by another patron, nor is it apparent from the record if the shot was consumed after Shingler came out of the restroom noticeably intoxicated.

{¶23} However, the disputed facts regarding what Shingler ate and drank are only material if from such evidence, reasonable minds could find The Basement knowingly sold or furnished alcohol to Shingler after she was noticeably intoxicated.

{¶24} We find there is no evidence in the record which disputes the testimony of Prunty and Muiter they did not serve Shingler any alcoholic beverages after she came out of the restroom noticeably intoxicated. While Western Reserve argues because neither Prunty or Muiter remembered serving the vodka drinks or the Malibu drink which appear on Shingler's bar tab, reasonable minds could find Shingler was served after she came out of the restroom. However, Western Reserve's argument relies solely on conjecture. Western Reserve presented no evidence the drinks Prunty and Muiter did not remember serving to Shingler were served to her after she came out of the restroom. Because there was no evidence to dispute The Basement's evidence Shingler was not served by Prunty

and Muiter after she was noticeably intoxicated, we find the trial court did not err in granting summary judgment dismissing Western Reserve's claim for violation of R.C. 4399.18.

{¶25} The assignment of error is overruled.

{¶26} The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, P.J.
Montgomery, J.
Popham, J. concur